IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| and ) | |
| ) | |
| THE STATE OF OHIO, ) | CIVIL ACTION NO. |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BP PRODUCTS NORTH AMERICA ) | |
| INC. and BP-HUSKY REFINING LLC, ) | |
| ) | |
| Defendants. ) | |

_____)

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General

of the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency ("EPA"), and the State of

Ohio ("Ohio"), on behalf of the Ohio Environmental Protection Agency ("Ohio EPA"), file this

Complaint and allege as follows:

## NATURE OF ACTION

1.     This civil action seeks injunctive relief and civil penalties from BP Products

North America Inc. ("BP Products") and BP-Husky Refining LLC ("BP-Husky") (collectively,

the "Defendants").  This action stems from the Defendants' alleged violations of the "Clean Air

Act," 42 U.S.C. § 7401 *et seq.*, the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11001 *et seq.*, at the Defendants' petroleum refinery located at 4001 Cedar Point Road, in Oregon, Lucas County, Ohio (the "Toledo Refinery").  The United States brings this case pursuant to Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), CERCLA Section 109(c), 42 U.S.C. § 9609(c), and EPCRA Section 325(b)(3), 42 U.S.C. § 11045(b)(3).

2.      As alleged in the Complaint, the Defendants failed to properly operate and maintain continuous emissions monitoring systems ("CEMS") at the Toledo Refinery.  Valves, piping, and other manufacturing equipment were not properly identified, monitored, or equipped in order to detect and repair leaks that emit volatile organic compounds ("VOCs") and hazardous air pollutants ("HAPs") into the air.  Refinery wastewater system components were not properly identified, inspected, and/or controlled.  The Defendants also failed to immediately report releases of hazardous substances and extremely hazardous substances to the appropriate state and local agencies.

3.      Ohio seeks the assessment of civil penalties and injunctive relief based on similar violations at the Toledo Refinery of the Ohio State Implementation Plan ("SIP") and other state rules and regulations that incorporate and implement the Clean Air Act's requirements.

4.      The United States alleges that the Defendants violated or will continue to violate the following Clean Air Act requirements that apply to the Toledo Refinery:

a.      The New Source Performance Standards ("NSPS") promulgated at 40 C.F.R. Part 60, Subparts A and J, pursuant to Clean Air Act Section 111, 42 U.S.C. § 7411 that relate to the operation and maintenance of CEMS;

b.      The NSPS, promulgated at 40 C.F.R. Part 60, Subpart QQQ,

2

             pursuant to Clean Air Act Section 111, 42 U.S.C. § 7411, relating to controlling VOC emissions from petroleum refinery wastewater systems;

    c.     Leak Detection and Repair ("LDAR") requirements for petroleum refineries promulgated at 40 C.F.R. Part 60 Subparts VV and GGG, pursuant to Clean Air Act Section 111, 42 U.S.C. § 7411;

    d.     The federally enforceable provisions of Ohio's SIP that incorporate, adopt, and/or implement the federal requirements listed in 4.a;

    e.     The Toledo Refinery's "Title V" permit; and

    f.     Requirements of CERCLA, 42 U.S.C. § 9603(a), and EPCRA, 42 U.S.C. § 11004(a) specifying that releases of hazardous substances and extremely hazardous substances be immediately reported.

5.     VOCs and HAPs were illegally emitted into Ohio's air because of the Defendants' alleged Clean Air Act and Ohio SIP violations.

## JURISDICTION, VENUE, AND AUTHORITY

6.     This Court has subject matter jurisdiction over this action pursuant to:

a) 28 U.S.C. §§ 1331, 1345, and 1355; b) Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b); c) Section 109(c) of CERCLA, 42 U.S.C. § 9609(c); and d) Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3).  This Court also has personal jurisdiction over the Defendants because BP Products and BP-Husky conduct business in this judicial district.

7.     This Court has supplemental jurisdiction over the state law claims asserted by Ohio pursuant to 28 U.S.C. § 1367.  Ohio's claims are part of the same case or controversy formed by the United States' claims in this action.  Ohio's claims involve the Toledo Refinery, stem from the same facts as the United States' claims, and seek similar relief.

8.      Venue lies in this judicial district pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), and Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in this judicial district.  BP Products and BP-Husky also conduct business in this judicial district.

9.      The United States Department of Justice has authority to bring this action on behalf of the EPA under 28 U.S.C. §§ 516 and 519 and Clean Air Act Section 305(a), 42 U.S.C. § 7605(a).

## NOTICE

10.     Notice of the Ohio SIP violations alleged in this Complaint was given to the Defendants and Ohio as required by Section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 7413(a)(1).  Ohio was given notice of the commencement of this action as required by Clean Air Act Section 113(b), 42 U.S.C. § 7413(b).

## PARTIES

11.     The Plaintiffs in this case are the United States, acting at the request of the EPA, and Ohio, acting at the request of the Ohio EPA.

12.     At all times relevant to the Complaint, Defendant BP Products has been a corporation incorporated under the laws of the State of Maryland and doing business at the Toledo Refinery.

13.     At all times relevant to the Complaint, BP Products has been, and continues to be, the "operator" of the Toledo Refinery (and its constituent process units) within the meaning of Sections 111(a) and 112(a) of the Clean Air Act, 42 U.S.C. §§ 7411(a) and 7412(a), and EPCRA

4

Section 304, 42 U.S.C. § 11004.  Until approximately August 2008, when it sold ownership of the refinery to BP-Husky, BP Products was also the "owner" of the Toledo Refinery (and its constituent process units), within the meaning of 42 U.S.C. §§ 7411(a) and 7412(a), and EPCRA Section 304, 42 U.S.C. § 11004.

14.     At all times relevant to the Complaint, BP Products has been, and continues to be, a "person in charge" of the Toledo Refinery, within the meaning of CERCLA Section 103(a), 42 U.S.C. § 9603(a).

15.     At all times relevant to the Complaint since approximately August 2008, Defendant BP-Husky has been a limited liability company existing under the laws of the State of Delaware and doing business at the Toledo Refinery.  Defendant BP-Husky, a joint venture between BP Products and Husky Refining L.L.C., has been the "owner," of the Toledo Refinery (and its constituent process units), within the meaning of Sections 111(a) and 112(a) of the Clean Air Act, 42 U.S.C. §§ 7411(a) and 7412(a), and EPCRA Section 304, 42 U.S.C. § 11004, at all times relevant to the Complaint since approximately August 2008.

16.     At all times relevant to the Complaint since approximately August 2008, BP-Husky has been, and continues to be, a "person in charge" of the Toledo Refinery, within the meaning of CERCLA Section 103(a), 42 U.S.C. § 9603(a).

17.     Each Defendant is a "person" within the meaning of:

   a.  Clean Air Act Section 302(e), 42 U.S.C. § 7602(e), and the federal and state Clean Air Act regulations cited in the Complaint;

   b.  CERCLA Section 101(21), 42 U.S.C. § 9601(21), and 40 C.F.R. § 302.3; and

   c.  EPCRA Section 329(7), 42 U.S.C. § 11049(7), and 40 C.F.R. § 355.61.

## THE TOLEDO REFINERY

18.     The Toledo Refinery processes up to 160,000 barrels of crude oil each day into marketable petroleum products.  These processing operations take place at different "process units" throughout the refinery.  Process units, like "fluid catalytic cracking units," are arrays of related components and equipment that use different physical, thermal, and chemical processes to produce intermediate or final products from petroleum, unfinished petroleum derivatives, or other intermediates.

## STATUTORY AND REGULATORY BACKGROUND

### A.     Clean Air Act Requirements

19.     The Clean Air Act's purpose is to protect and enhance the nation's air quality in order to promote the public's health, welfare, and productive capacity.  *See* 42 U.S.C. § 7401(b)(1).

20.     The Clean Air Act regulates "stationary sources" of air pollutants.  Stationary sources are typically fixed industrial or manufacturing facilities, like petroleum refineries.  *See* 42 U.S.C. § 7411(a)(3).  Stationary sources contrast with mobile sources of air pollution, like vehicles, which the Clean Air Act also regulates.

21.     The Toledo Refinery is a stationary source within the meaning of 42 U.S.C. §§ 7411(a)(3) and 7602(j).  The Toledo Refinery consists of process units and other types of buildings, structures, facilities, and installations, like tanks and wastewater treatment system components, which emit air pollutants.

6

     i.  <u>40 C.F.R. Part 60 – New Source Performance Standards</u>

       1.  Background

  22.  Clean Air Act Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), requires the EPA

to publish and periodically revise a list of categories of stationary sources that, in the EPA's

judgment, cause or contribute significantly to air pollution which may reasonably be anticipated

to endanger public health or welfare.  These categories generally correspond to distinct

manufacturing processes or equipment within a given industry.

  23.  Once a category is included on the list, Clean Air Act Section 111(b)(1)(B),

42 U.S.C. §7411(b)(1)(B), requires the EPA to promulgate a "New Source Performance

Standard" (NSPS) to regulate emissions from new sources within that category.  The NSPS are

published at 40 C.F.R. Part 60.  For example, 40 C.F.R. Part 60, Subpart GGG covers VOC leaks

from certain equipment at petroleum refineries, while 40 C.F.R. Part 60, Subpart QQQ covers

VOC emissions from certain wastewater systems at petroleum refineries.

  24.  A "new source" is defined as any stationary source for which construction or

modification is commenced after an applicable NSPS is published or proposed.  *See* 42 U.S.C.

§ 7411(a)(2).

  25.  NSPS apply to both the owner and operator of any stationary source that contains

an *affected facility* that is constructed or modified after an applicable NSPS is published.  *See* 40

C.F.R. § 60.1.  An "affected facility" is defined as "any apparatus to which a [NSPS] standard is

applicable."  40 C.F.R. § 60.2.

26.     Clean Air Act Section 111(e), 42 U.S.C. § 7411(e), prohibits the owner or operator of a new source from operating that source in violation of an NSPS after the effective date of the NSPS applicable to such source.

2.      Part 60, Subpart A: NSPS General Standards and
CEMS Requirements

27.     Pursuant to Clean Air Act Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), the EPA promulgated general regulations that apply to all stationary sources subject to a NSPS, regardless of their industrial category.  These general NSPS standards are found at 40 C.F.R. §§ 60.1 - 60.19 ("NSPS Subpart A").

28.     NSPS Subpart A includes requirements for "continuous monitoring systems" – equipment used to sample, analyze, and record emissions or operating parameters – required by other specific subparts of the NSPS.  See 40 C.F.R. § 60.13; see also 40 C.F.R. § 60.2 (defining "continuous monitoring system").  CEMS are a type of continuous monitoring systems.

29.     CEMS must be in "continuous operation" except for certain periods of time, such as system breakdowns, repairs, calibration checks, and zero and span adjustments.  *See* 40 C.F.R. § 60.13(e).

3.      Part 60, Subpart J: NSPS Standards for Petroleum Refineries

30.     Pursuant to Clean Air Act Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), the EPA promulgated regulations that apply to certain affected facilities at petroleum refineries, like the Toledo Refinery, which commenced construction, reconstruction, or modification after June 11, 1973.  These NSPS standards are found at 40 C.F.R. §§ 60.100 *et seq.* ("NSPS Subpart J").

31.     The affected facilities that NSPS Subpart J applies to include: "fluid catalytic cracking unit catalyst regenerators," "fuel gas combustion devices," such as certain heaters and boilers, and "Claus sulfur recovery plants" with a capacity greater than twenty (20) long tons per day. *See* 40 C.F.R. § 60.100(a) and (b); *see also* 40 C.F.R. § 60.101 (definitions).

32.     NSPS Subpart J requires that:

a.  Fluid catalytic cracking unit catalyst regenerators subject to 40 C.F.R. § 60.103(a) must use a CEMS to record the concentration of carbon monoxide (CO) and sulfur dioxide ($SO_2$) emissions into the atmosphere. *See* 40 C.F.R. § 60.105(a)(2) (for CO) and (9)-(10) (for $SO_2$).

b.  Claus sulfur recovery plants subject to NSPS Subpart J must use a CEMS to record the concentration of $SO_2$ emissions into the atmosphere. *See* 40 C.F.R. § 60.105(a)(1) and (5).

c.  Fuel gas combustion devices subject to 40 C.F.R. § 60.104(a)(1) must use a CEMS to record either the concentration of $SO_2$ emissions into the atmosphere or the concentration of hydrogen sulfide ($H_2S$) in fuel gases that will be burned in an affected fuel gas combustion device. *See* 40 C.F.R. § 60.105(a)(3)-(4).

33.     CEMS required by NSPS Subpart J must comply with 40 C.F.R. § 60.13(e). *See* 40 C.F.R. § 60.13(a).

4.      Part 60, Subparts VV and GGG - NSPS LDAR Standards

34.     LDAR requirements focus on ensuring that covered sources maintain an accurate inventory of equipment that may leak (and therefore emit) VOCs and HAPs, regularly monitor that equipment to identify leaks, and timely and effectively repair equipment leaks.

35.     The affected facilities under NSPS Subpart GGG include compressors and "equipment" in petroleum refinery "process units" that were constructed, reconstructed, or modified between January 4, 1983 and November 7, 2006. *See* 40 C.F.R. §§ 60.590(a)-(b). A

process unit includes components assembled to produce intermediate or final products from petroleum, unfinished petroleum derivatives, or other intermediates.  40 C.F.R. §§ 60.590(e) and 60.591.

36.     The "equipment" regulated by NSPS Subpart GGG includes each valve, pump, pressure relief device, sampling connection system, open-ended valve or line, and flange or other connector "in VOC service" at the affected petroleum refinery.  40 C.F.R. § 60.591.

37.     Each owner or operator of a petroleum refinery that is subject to the requirements of NSPS Subpart GGG must, in turn, comply with the enumerated standards of NSPS Subpart VV (40 C.F.R. § 60.482-1 – 60.482-10).  *See* 40 C.F.R. § 60.592(a).  In particular, NSPS Subpart VV sets forth LDAR requirements for three categories of equipment that are all present at the Toledo Refinery: (a) pumps in light liquid service (40 C.F.R. § 60.482-2); (b) open-ended valves and lines (40 C.F.R. § 60.482-6); and (c) valves in gas/vapor service and in light liquid service (40 C.F.R. § 60.482-7).

38.     NSPS Subpart VV requires that a listing of identification numbers for all equipment that is subject to NSPS Subpart VV at an affected petroleum refinery must be recorded and logged.  *See* 40 C.F.R. § 60.486(e)(1).

39.     NSPS Subpart VV requires that the owner or operator undertake periodic monitoring for each valve and pump subject to NSPS Subpart VV in order to detect VOC leaks.  *See* 40 C.F.R. §§ 60.482-7(a) and (c) (valves) and 60.482-2(a) (pumps).

40.     NSPS Subpart VV requires that equipment monitoring must be performed in accordance with "Method 21" at 40 C.F.R. Part 60, Appendix A.  *See* 40 C.F.R. § 60.485(b)(1).

41.     Method 21 includes performance and calibration criteria for the instruments used to monitor for equipment leaks. Method 21's requirements and procedures are intended to ensure that leak monitoring equipment is properly assembled, calibrated, and used to accurately detect the compounds they must measure. *See* 40 C.F.R. Part 60, Appendix A, Sections 2, 6, 8, and 10.

42.     Improperly conducted Method 21 monitoring may fail to accurately detect leaks of HAPs from equipment that is subject to 40 C.F.R. Part 60, Subpart VV. Improperly conducted Method 21 monitoring may also fail to determine whether or not leaks of HAPs have been properly repaired.

43.     With certain exceptions not relevant here, NSPS Subpart VV requires each open-ended valve or line ("OEL") to be equipped with a cap, blind flange, plug, or second valve. *See* 40 C.F.R. § 60.482-6(a)(1).

5.     Part 60, Subpart QQQ – Controlling VOC Emissions from Refinery Wastewater Systems

44.     NSPS Subpart QQQ applies to certain equipment used in petroleum refinery wastewater systems that was constructed, reconstructed, or modified after May 4, 1987. *See* 40 C.F.R. § 60.690(a). These types of equipment – "individual drain systems," "oil-water separators," and "aggregate facilities" – are the "affected facilities" under NSPS Subpart QQQ. *See id.*; *see also* 40 C.F.R. § 60.691 (defining individual drain system, oil-water separator, and aggregate facility).

45.     Each owner or operator of a petroleum refinery that is subject to the requirements of NSPS Subpart QQQ, like the Toledo Refinery, is required to comply with the standards of 40

C.F.R. §§ 60.692-1 to 60.692-5, using the methods and procedures specified in 40 C.F.R.

§ 60.696, to keep records as specified in 40 C.F.R. § 60.697, and to submit reports as specified in

40 C.F.R. § 60.698.

ii.    SIPs

46.    Clean Air Act Section 110, 42 U.S.C. § 7410, requires each state to adopt and

submit to EPA for approval a SIP that provides for how the state, like Ohio, will meet certain

Clean Air Act requirements.  SIPs may also contain some unique, yet federally enforceable, air

quality requirements.

47.    A SIP is enforceable by the state in which it is adopted. After a SIP is approved

by the EPA, it is also federally enforceable pursuant to Clean Air Act Section 113(b), 42 U.S.C.

§ 7413(b).

48.    Pursuant to Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R.

§ 52.23, the EPA may enforce violations of Ohio's federally approved SIP requirements, as well

as violations of permits issued pursuant to those programs.

iii.    Clean Air Act "Title V" Permits

49.    Title V of the Clean Air Act, 42 U.S.C. §§ 7661–7661f, ("Title V") establishes an

operating permit program for certain stationary sources of air pollution.  *See* 42 U.S.C.

§ 7661a(a).  "Major" stationary sources subject to Clean Air Act Section 111's NSPS are subject

to Title V permitting requirements.  *See* 42 U.S.C. § 7661(2)(a), 40 C.F.R. § 70.2 (defining a

Title V "major source").  Title V's purpose is to ensure that all "applicable requirements"

governing a facility's compliance with the Clean Air Act, including SIP requirements, are

collected in one permit – a "Title V operating permit."  *See* 42 U.S.C. § 7661c(a).

12

50.     States may receive approval from the EPA to administer the Title V permitting program in that state.  Pursuant to Section 502(b) of the Clean Air Act, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V.  *See* 57 Fed. Reg. 32250 (July 21, 1992).  These regulations, which are codified at 40 C.F.R. Part 70, also establish the minimum elements of a Title V operating permit program that a state agency, like the Ohio EPA, must meet if they request authorization to administer their state's Title V permitting program.  *See id.*

51.     EPA fully approved Ohio's Title V permit program, which became effective on October 1, 1995.  *See* 60 Fed. Reg. 42045 (August 15, 1995).  Ohio is therefore authorized to issue and enforce Title V permits.  Ohio's Title V permit program requirements are codified at OAC Chapter 3745-77.  In all respects relevant to this Complaint, Ohio's Title V requirements closely mirror the federal Title V regulations codified at 40 C.F.R. Part 70.

52.     Title V permits are federally enforceable by EPA.  42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

53.     Section 502(a) of the Clean Air Act (42 U.S.C. § 7661a(a)) and the Title V permit program and regulations of Ohio provide that, after the effective date of the state Title V permit program, no stationary source subject to Title V may operate except in compliance with a Title V permit.  *See* 42 U.S.C. § 7661a(a); 40 C.F.R. §§ 70.1(b) and 70.7(b).  It is unlawful to violate any requirement of a Title V permit.  *See id.*

54.     Section 504(a) of the Clean Air Act (42 U.S.C. § 7661c(a)), 40 C.F.R. § 70.6(a) and (c), and Ohio's Title V regulations require that each Title V permit include, *inter alia*, enforceable emission limitations and standards, a schedule of compliance, and such other

13

conditions as are necessary to assure compliance with all applicable requirements of the Clean Air Act, including the requirements of the applicable SIP.

55.     At all times relevant herein, the Toledo Refinery has been subject to the Title V permitting requirements contained in 40 C.F.R. Part 70 and the Ohio SIP.

56.     Since approximately August of 2004, and at all times relevant to this Complaint, the Toledo Refinery has been subject to a federally enforceable Title V permit that has been issued pursuant to the Ohio SIP, including O.A.C. 3745-77.

**B.      CERCLA and EPCRA Release Reporting Requirements**

57.     Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and Section 304 of EPCRA, 42 U.S.C. § 11004, require that notice must be provided of releases of certain hazardous or extremely hazardous substances.  These requirements provide a mechanism to alert federal, state, and local agencies that may be called upon to respond to the release or underlying cause of the release.  These notification requirements help prevent harm to emergency responders, facility personnel, and the local community.  A delay or failure to notify could hamper the governments' response to an emergency and pose serious threats to human health and the environment.

i.      CERCLA Section 103(a) – Notice to the National Response Center

58.     Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires that any person in charge of an onshore facility report the non-permitted release of a hazardous substance from the facility to the National Response Center as soon as that person has knowledge of such a release that occurs in any 24-hour period in an amount equal to or greater than the reportable quantity under Section 102 of CERCLA, 42 U.S.C. § 9602, and 40 C.F.R. §§ 302.4 and 302.6.

59.     Pursuant to CERCLA Sections 102 and 103, 42 U.S.C. §§ 9602 and 9603, EPA promulgated federal regulations, known as the "CERCLA Notification Rules," published at 40 C.F.R. Part 302.  These CERCLA Notification Rules designate hazardous substances, identify reportable quantities for these substances, and set forth notification requirements for these substances.

60.     Asbestos, benzene, hydrogen sulfide, naphthalene, and sulfuric acid are each a "hazardous substance" as that term is defined under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. §§ 302.3-302.4.

61.     Each of the following hazardous substances has the following reportable quantity ("RQ") as indicated at 40 C.F.R. Part 302, Table 302.4: asbestos RQ is 1 lb.; benzene RQ is 10 lbs.; hydrogen sulfide RQ is 100 lbs.; naphthalene RQ is 100 lbs.; and sulfuric acid RQ is 1,000 lbs.

62.     The regulations at 40 C.F.R. § 302.6 require, among other things, that any person in charge of an onshore facility must immediately notify the National Response Center as soon as that person has knowledge of any non-permitted release of a hazardous substance from such facility in quantities equal to or greater than the applicable reportable quantity.

    ii.     EPCRA Section 304 – Notice to SERCs and LEPCs

63.     The purpose of EPCRA is to provide communities with information on nearby potential chemical hazards and to facilitate state and local emergency planning efforts to control any accidental releases.  *See* 51 Fed. Reg. 41,570 (Nov. 17, 1986).

64.     To achieve this goal, EPCRA mandates notification requirements on industrial and commercial facilities and mandates that state emergency response commissions ("SERCs")

and local emergency planning committees ("LEPCs") be created. EPCRA establishes a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous chemicals, and to provide for emergency response in the event of a release.

65. Pursuant to Section 302(a) of EPCRA, 42 US.C. § 11002(a), the EPA published a list of extremely hazardous substances which, when released into the environment, may present a substantial danger to public health or welfare or the environment. EPA also promulgated regulations establishing the threshold RQ for these extremely hazardous substances that trigger the reporting requirements of Sections 304(b) and 304(c) of EPCRA, 42 U.S.C. §§ 11004(b) and (c). The list of RQs for EPCRA extremely hazardous substances is codified at 40 C.F.R. Part 355, Appendix A.

66. Hydrogen sulfide, sulfur dioxide, and sulfuric acid are each an "extremely hazardous substance" as that term is defined under 42 US.C. § 11002(a) and 40 C.F.R. Part 355, Appendix A.

67. Each of the following hazardous substances has the following reportable quantity ("RQ") as indicated at 40 C.F.R. Part 355, Appendix A: hydrogen sulfide RQ is 100 lbs.; sulfur dioxide RQ is 500 lbs.; and sulfuric acid RQ is 1,000 lbs.

68. Sections 304(a) and (b) of EPCRA, 42 U.S.C. §§ 11004(a) and (b), and the regulations found at 40 C.F.R. § 355.40, require owners and operators of EPCRA-regulated facilities to immediately notify the SERC and LEPC in any areas likely to be affected by a release of an extremely hazardous substance or CERCLA hazardous substance in a quantity equal to or greater than the RQ.

69. Section 304(b) of EPCRA, 42 U.S.C. 11004(b), and 40 C.F.R. § 355.40 specify

16

the information that must be included in any notice required pursuant to EPCRA Section 304(a), 42 U.S.C. 11004(a).

      **C.**     **Enforcement Provisions**

          i.     Clean Air Act

70.     Clean Air Act Sections 113(a)(1)(C) and (a)(3)(C), 42 U.S.C. §§ 7413(a)(1)(C) and (a)(3)(C), authorize the EPA to bring a civil enforcement action under Clean Air Act Section 113(b) for the violations alleged in this Complaint. Civil enforcement actions may be based on "any information available" to the EPA that indicates that any person has violated or is in violation of, *inter alia*, Clean Air Act Section 111, a NSPS regulation, the Title V permit program, Ohio's SIP, or the terms of the Toledo Refinery's Title V permit. *See* 42 U.S.C. §§ 7413(a)(1)(C) and (a)(3)(C); 40 C.F.R. § 52.23.

71.     A civil action commenced under Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), may seek permanent or temporary injunctive relief. *See* 42 U.S.C. § 7413(b). The Court is also authorized to affirmatively "require compliance" and "award any other appropriate relief." *See id*.

72.     A civil action commenced under Clean Air Act Section 113(b), 42 U.S.C. § 7413(b), may also seek civil penalties of up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009; up to $37,500 per day for each violation that occurs between January 13, 2009 and November 2, 2015; and up to $99,681 per day for each violation that occurs after November 2, 2015 and that is assessed on or after February 6, 2019. *See* 40 C.F.R. § 19.4 (listing annual inflation adjustments to maximum civil penalties).

       ii.      CERCLA

73.     A civil action commenced under CERCLA Section 109(c), 42 U.S.C.

§ 9609(c), may seek civil penalties, for each day during which an initial violation (or failure or

refusal) of CERCLA Section 103(a)'s notice requirement continues, of up to $32,500 per day for

each violation occurring between March 15, 2004 and January 12, 2009; up to $37,500 per day

for each violation that occurs between January 13, 2009 and December 6, 2013.  *See* 40 C.F.R.

§ 19.4.

74.     For each day during which a second or subsequent violation of CERCLA

Section 103(a)'s notice requirements continues, a civil penalty may be assessed under CERCLA

Section 109(c) of up to $97,500 per day for each violation occurring between March 15, 2004

and January 12, 2009; and up to $107,500 per day for each violation that occurs between January

13, 2009 and December 6, 2013.  *See* 40 C.F.R. § 19.4.

       iii.     EPCRA

75.     A civil action commenced under Section 325(b)(3) of EPCRA, 42 U.S.C.

§ 11045(b)(3), may seek civil penalties from any person who violates EPCRA Section 304, 42

U.S.C. § 11004.  The United States may seek civil penalties of up to $32,500 per day for each

day the violation continues for violations occurring between March 15, 2004 and January 12,

2009, and up to $97,500 per day for each day that any second or subsequent violation continues.

*See* 40 C.F.R. § 19.4.  For violations occurring between January 13, 2009 and December 6, 2013,

civil penalties are authorized of up to $37,500 per day for each day the violation continues, and

up to $107,500 per day for each day that any second or subsequent violation continues.  *See id.*

## GENERAL ALLEGATIONS

### A. Clean Air Act

76.     At all times relevant to the Complaint, the Toledo Refinery has been a "major stationary source" within the meaning of 42 U.S.C. §§ 7602(j), 7661(2), and 40 C.F.R. § 70.2. The Toledo Refinery emits or has had the potential to emit at least 100 tons per year of nitrogen oxides (NOx), $SO_2$, CO, particulate matter (PM) (including $PM_{10}$ and $PM_{2.5}$), and/or VOCs.

77.     At all times relevant to the Complaint, the Toledo Refinery has been a "petroleum refinery" within the meaning of 40 C.F.R. §§ 60.1, 60.2, 60.100(a), 60.101(a), 60.590(a), and 60.690(a).

78.     At all times relevant to the Complaint, the Toledo Refinery has been an "affected facility," and has contained individual "affected facilities," that are subject to regulation pursuant to 40 C.F.R. Part 60, Subparts A and J.  These affected facilities include:

    a.  The CO Boiler for fluid catalytic cracking unit 2 ("FCC 2") (Emissions Unit P007);

    b.  Sulfur Recovery Units #2 and 3 (Emissions Unit P037); and

    c.  The following fuel gas combustion devices: process heaters and boilers B001 (hydrogen furnace), B005 (Reformer 2 Regenerator Furnace), B006 (Reformer 2 Furnace), B008 (Iso 2 Feed Heater), B009 (Iso 2 Stabilizer Reboiler), B010 (Iso 2 Splitter Reboiler), B013 (Reformer 1 Regenerator Furnace), B014 (Reformer 1 Furnace), B015 (Crude 1 Furnace), B017 (Coker II Heater), B018 (FCC Preheater), B019 (Crude/Vac 2 Furnace), B022 (Naphtha Treater Heater), B024 (Asphalt Heater), B029 (A-Train Diesel Hydrotreater ("ADHT") Furnace), B030 (B-Train Gas Oil Hydrotreater ("BGOT") Furnace), B031 (Vac 1 Furnace), B032 Coker 3 Furnace), B033 and B034.

79.     At all times relevant to the Complaint, the following eight CEMS were used to monitor the affected facilities listed in the preceding paragraph: H031, H030, H33, and H041

(for H$_2$S), S119, S201, and S283 (for SO$_2$), and C089 (for CO).  Each of these CEMS were

subject to the requirements of 40 C.F.R. Subparts A and J, including 40 C.F.R. § 60.13(e).

80.     At all times relevant to the Complaint, the Toledo Refinery has contained

"process units" and thousands of pieces of "equipment" that are "affected facilities" within the

meaning of 40 C.F.R. Part 60, Subparts VV and Subpart GGG.  *See* 40 C.F.R. §§ 60.590(a)(1)

and (3) and 60.591.  These process units include, but are not limited to, FCC2, the ADHT,

BGOT, Coker 2, alkylation units (Alky 1, Alky 2, and Alky 3), crude vacuum distillation units,

Deisobutanizer Tower, isocracker, catalytic reformers (Reformers 1, 2, and 3), Sulfur Recovery

Unit (SRU #1), amine unit, butane vapor recovery unit, saturated and unsaturated gas plants, and

tank farms (the "East" and "West" Tanks Farms).

81.     At all times relevant to this Complaint, these process units listed in the preceding

paragraph have contained the following types of equipment, which constitute an affected facility

within the meaning of NSPS Subpart GGG and VV: valves, pumps, pressure relief devices,

sampling connection systems, open-ended valves or lines, and flanges or other connectors in

VOC service.  *See* 40 C.F.R. §§ 60.590(a)(3) and 60.591 (defining "equipment").

82.     At all times relevant to this Complaint, there have been at least five process units

at the Toledo Refinery with individual drain systems that are affected facilities subject to NSPS

Subpart QQQ: the ADHT, BGOT; TRP Sulfur Recovery Unit; the Isocracker 2; and Coker 3.

*See* 40 C.F.R. § 60.690(a).  The Toledo Refinery also has other wastewater system components

that have been "affected facilities" within the meaning of NSPS Subpart QQQ at all times

relevant to the Complaint, including an 84-inch process sewer line; other process sewers lines;

oil-water separators; a stormwater diversion chamber; list stations; inlet and outlet sewer

connections to two in-ground stormwater impoundment tanks (T168 and T169); and secondary containment dike drain lines serving several aboveground storage tanks (T153, T154, T155, Tl 56, Tl 57, Tl59, T161, Tl 63, T164, T166 and T167). *See id.*; *see also* 40 C.F.R. § 60.691 (defining "aggregate facility," "individual drain system," and "oil-water separator," "sewer line," and "wastewater system"). The units and wastewater system components referenced in this paragraph were constructed, reconstructed, or modified after May 4, 1987, within the meaning of 40 C.F.R. §§ 60.2, 60.690-91.

## B. CERCLA and EPCRA

83. The Toledo Refinery is a "facility" as that term is defined under Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). The Toledo Refinery is a "facility" as that term is defined under Section 329(4) of EPCRA, 42 U.S.C. § 11049(4).

84. The Toledo Refinery is an "onshore facility," within the meaning of Sections 101(9), 101(18) and 103(a) of CERCLA, 42 U.S.C. §§ 9601(9), 9601(18), and 9603(a), and 40 C.F.R. § 302.3.

85. Sulfur dioxide, benzene, hydrogen sulfide, naphthalene, and sulfuric acid are each a "hazardous chemical" within the meaning of Section 311(e) of EPCRA, 42 U.S.C. § 11021(e), and 29 C.F.R. § 1910.1200(c). At all times relevant to this Complaint, each of these hazardous chemicals was produced, used and/or stored at the Toledo Refinery.

## FIRST CLAIM FOR RELIEF

### Failure to Continuously Operate CEMS

### (*Violations of NSPS Subparts A and J; Title V Requirements*)

86. Paragraphs 1-33, 46-56, 70-72, and 76-79 are re-alleged and incorporated herein by reference.

87. On numerous occasions between 2006 and 2011, the Defendants failed to continuously operate CEMS at the Toledo Refinery as follows:

    a. Between the third calendar quarter of 2007 and the second calendar quarter of 2008, CEMS H031 failed to continuously monitor and record the concentration of $H_2S$ in the fuel gas burned in Emissions Units B001, B005, B008, B009, B010, B024, and B029, as required by 40 C.F.R. § 60.105(a);

    b. Between the fourth calendar quarter of 2007 and the fourth calendar quarter of 2009, CEMS H030 failed to continuously monitor and record the concentration of $H_2S$ in the fuel gas burned in Emissions Units B013, B014, B015, B017, B018, B019, B022, B030, B031, B033, and P007, as required by 40 C.F.R. § 60.105(a);

    c. Between the first calendar quarter of 2007 and the second calendar quarter of 2011, CEMS H033 failed to continuously monitor and record the concentration of $H_2S$ in the fuel gas burned in Emissions Units B032 and B034, as required by 40 C.F.R. § 60.105(a);

    d. During the fourth calendar quarter of 2007, CEMS H041 failed to continuously monitor and record the concentration of $H_2S$ in the fuel gas burned in Emissions Unit B004, as required by 40 C.F.R. § 60.105(a);

    e. Between the second calendar quarter of 2007 and the fourth calendar quarter of 2009, CEMS S119 failed to continuously monitor and record the concentration of $SO_2$ emissions from Emissions Unit P007, as required by 40 C.F.R. § 60.105(a);

    f. During the fourth calendar quarter of 2009, CEMS S283 failed to continuously monitor and record the concentration of $SO_2$ emissions from Emissions Unit P007, as required by 40 C.F.R. § 60.105(a);

    g.   Between the second and fourth calendar quarters of 2007, CEMS C089 failed to continuously monitor and record the concentration of CO emissions from Emissions Unit P007, as required by 40 C.F.R. § 60.105(a);

    h.   Between the first calendar quarter of 2006 and the first calendar quarter of 2011, CEMS S201 failed to continuously monitor and record the concentration of $SO_2$ emissions from Emissions Unit P037, as required by 40 C.F.R. § 60.105(a).

88.    The acts and/or omissions alleged in this Claim for Relief constitute violations of:

    a.   Section 111(e) of the Clean Air Act, 42 U.S.C. § 7411(e);

    b.   40 C.F.R. §§ 60.13(e) and 60.105(a);

    c.   The federally enforceable corollary provisions of the Ohio SIP that adopt, incorporate, and/or implement any of the federal provisions cited in sub-paragraphs 88(a)–(b);

    d.   The terms of the Toledo Refinery's Title V Permit that require compliance with the requirements identified in sub-paragraphs 88(a)–(c); and

    e.   The prohibitions against violating a Title V permit found at 42 U.S.C. § 7661a(a) and 40 C.F.R. § 70.7(b).

89.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

90.    As provided in Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject the Defendants to injunctive relief and civil penalties.  *See also* 40 C.F.R. § 19.4.

**SECOND CLAIM FOR RELIEF**

**Failure to Properly Identify Equipment Subject to LDAR Requirements**

(***Violations of NSPS Part 60, Subparts VV and GGG; Title V Requirements***)

91.     Paragraphs 1-26, 34-43, 46-56, 70-72, 76-77, and 80-81 are re-alleged and incorporated herein by reference.

92.     Between approximately 2008 and 2016, the Defendants failed to identify and record the identification numbers, as required by 40 C.F.R. § 60.486(e)(1), of all valves at the Toledo Refinery that were subject to the requirements of 40 C.F.R. Part 60, Subpart GGG, and, in turn, 40 C.F.R. Part 60, Subpart VV.  The Defendants failed to identify and record the identification numbers of: 9 valves in 2008, 25 valves in 2010, 13 valves in 2012, and 26 valves in 2016.

93.     These "missed" valves were in VOC service in process units at the Toledo Refinery that were constructed, reconstructed, or modified between January 4, 1983 and November 7, 2006.  These units include, but are not limited to, the Alky 1 and 2, "Blender," "Benzene-Stripper," Isocracker 2, Reformer 2, Crude Unit 1, and Crude Vac Unit 2.  The missed valves were, therefore, "equipment" and an "affected facility" subject to the requirements of 40 C.F.R. Part 60, Subpart GGG, and, in turn, 40 C.F.R. Part 60, Subpart VV, 40 C.F.R. § 60.486(e)(1).

94.     The acts and/or omissions alleged in this Claim for Relief constitute violations of:

    a.   Section 111(e) of the Clean Air Act, 42 U.S.C. § 7411(e);

    b.   40 C.F.R. § 60.486(e)(1);

    c.   The terms of the Toledo Refinery's Title V Permit that require compliance
         with the requirements identified in sub-paragraphs 94(a)–(b); and

    d.   The prohibitions against violating a Title V permit found at 42 U.S.C. § 7661a(a) and 40 C.F.R. § 70.7(b).

95.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

96.    As provided in Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject the Defendants to injunctive relief and civil penalties. *See also* 40 C.F.R. § 19.4.

## <u>THIRD CLAIM FOR RELIEF</u>

### Failure to Properly Monitor for Leaking Equipment

### (*Violations of NSPS Part 60, Subparts VV and GGG; Title V Requirements*)

97.    Paragraphs 1-26, 34-43, 46-56, 70-72, 76-77, and 80-81 are re-alleged and incorporated herein by reference.

98.    Between approximately 2006 and 2016, the Defendants failed to monitor all equipment at the Toledo Refinery that was subject to the requirements of 40 C.F.R. Part 60, Subpart GGG, and, in turn, 40 C.F.R. Part 60, Subpart VV, in accordance with Method 21 as required by 40 C.F.R. § 60.485(b)(1). The Defendants failed to properly monitor: more than 1,000 valves between 2006 and 2016, approximately 800 components in 2006, and at least one pump in both 2008 and 2012. "Comparative monitoring" analysis performed in 2007 also showed that the Defendants had failed to monitor equipment at the LPG Units and Reformer 2 at the Toledo Refinery in accordance with Method 21.

99.    The acts and/or omissions alleged in this Claim for Relief constitute violations of:

    a.   Section 111(e) of the Clean Air Act, 42 U.S.C. § 7411(e);

    b.   40 C.F.R. § 60.485(b)(1);

    c.   The terms of the Toledo Refinery's Title V Permit that require compliance with the requirements identified in sub-paragraphs 99(a)–(b); and

    d.   The prohibitions against violating a Title V permit found at 42 U.S.C. § 7661a(a) and 40 C.F.R. § 70.7(b).

100.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

101.    As provided in Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject the Defendants to injunctive relief and civil penalties.  *See also* 40 C.F.R. § 19.4.

## FOURTH CLAIM FOR RELIEF

### Failure to Properly Equip Open-Ended Lines

### (*Violations of NSPS Part 60, Subparts VV and GGG; Title V Requirements*)

102.    Paragraphs 1-26, 34-43, 46-56, 70-72, 76-77, and 80-81 are re-alleged and incorporated herein by reference.

103.    Between approximately 2006 and 2016, the Defendants failed to equip all OELs at the Toledo Refinery that were subject to the requirements of 40 C.F.R. Part 60, Subpart GGG, and, in turn, 40 C.F.R. Part 60, Subpart VV, with a cap, blind flange, plug, or second valve, as required by 40 C.F.R. § 60.482-6(a)(1).  The Defendants failed to properly equip: 14 OELs in 2006, 2 OELs in both 2010 and 2012, and 6 OELs in 2016.

104.    The acts and/or omissions alleged in this Claim for Relief constitute violations of:

    a.   Section 111(e) of the Clean Air Act, 42 U.S.C. § 7411(e);

    b.   40 C.F.R. § 60.482-6(a)(1);

    c.   The terms of the Toledo Refinery's Title V Permit that require compliance with the requirements identified in sub-paragraphs 104(a)–(b); and

d.   The prohibitions against violating a Title V permit found at 42 U.S.C.
§ 7661a(a) and 40 C.F.R. § 70.7(b).

105.   Unless restrained by an order of the Court, the violations alleged in this Claim for

Relief will continue.

106.   As provided in Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), the violations

set forth above subject the Defendants to injunctive relief and civil penalties.  *See also* 40 C.F.R.

§ 19.4.

## FIFTH CLAIM FOR RELIEF

**Failure to Properly Inspect, Monitor, and Control Refinery Wastewater Components**

(***Violations of NSPS Subpart QQQ and Title V Requirements***)

107.   Paragraphs 1-18, 44-56, 70-72, 76-77, and 82 are re-alleged and incorporated

herein by reference.

108.   Between approximately 2008 and January 2013, the Defendants failed to properly

inspect all drain hubs, drain valves, cleanouts, vent pipes, manholes, and lift stations subject to

NSPS Subpart QQQ at the Toledo Refinery, as required by 40 C.F.R. § 60.692-2(a)(2), 40 C.F.R.

§ 60.692-2(a)(3), and 40 C.F.R. § 60.692-2(b)(3).

109.   Between approximately 2008 and January 2013, the Defendants failed to cover all

cleanouts and manholes subject to NSPS Subpart QQQ at the Toledo Refinery with a tight seal,

as required by 40 C.F.R. § 60.692-2(b)(2).

110.   Between approximately 2008 and January 2013, the Defendants failed to keep the

diameter of two vent pipes subject to NSPS Subpart QQQ at the Toledo Refinery under 4 inches,

as required by 40 C.F.R. § 60.692-2(b)(1).

111.    Between approximately 2008 and January 2013, the Defendants failed to inspect at least 46 drain hubs, seven drain valves, 186 cleanouts, 48 vent pipes, 62 manholes, eight catch basins and a lift station subject to NSPS Subpart QQQ at the Toledo Refinery for indications of potential emissions, defects, or other problems before using the equipment, as required by 40 C.F.R. § 60.696(a).

112.    Between approximately 2008 and January 2013, the Defendants failed to summarize in semi-annual reports to the EPA all inspections when a water seal was found to be dry or otherwise breached, as well as information about the repairs or corrective action taken, as required by 40 C.F.R. § 60.698(c).

113.    The acts and/or omissions alleged in this Claim for Relief constitute violations of:

   a.   Section 111(e) of the Clean Air Act, 42 U.S.C. § 7411(e);

   b.   40 C.F.R. §§ 60.692-2(a)(2)-(3), 60.692-2(b)(1)-(3), 60.696(a), and 60.698(c);

   c.   The terms of the Toledo Refinery's Title V Permit that require compliance with the requirements identified in sub-paragraphs 113(a)–(b); and

   d.   The prohibitions against violating a Title V permit found at 42 U.S.C. § 7661a(a) and 40 C.F.R. § 70.7(b).

114.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

115.    As provided in Clean Air Act Sections 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject the Defendants to injunctive relief and civil penalties.  *See also* 40 C.F.R. § 19.4.

28

## SIXTH CLAIM FOR RELIEF

### Failure to Immediately Notify to National Response Center

#### (*Violations of CERCLA Section 103(a)*)

116.    Paragraphs 1-26, 57-69, 73-75, and 83-85 are re-alleged and incorporated herein by reference.

117.    On the following dates, the following releases of hazardous substances occurred from the Toledo Refinery:

     a.  June 21, 2009, 6.9 lbs of asbestos;

     b.  September 23, 2010, 18 lbs of benzene;

     c.  October 6, 2010, 200 lbs of $H_2S$;

     d.  April 6, 2011, 403 lbs of naphthalene;

     e.  July 9, 2011, 316 lbs of $H_2S$; and

     f.  March 24, 2012, 10,226 lbs of sulfuric acid

118.    Each of these releases is a "release" as that term is defined under Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and 103(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9603(a), and 40 C.F.R. § 302.3.

119.    Each of these releases equaled or exceeded the "reportable quantity," within the meaning of Sections 102 and 103(a) of CERCLA, 42 U.S.C. §§ 9602 and 9603(a), and 40 C.F.R. § 302.3, for the respective hazardous substances.

120.    The Defendants each had actual or constructive "knowledge," within the meaning of Section 103(a) CERCLA, 42 U.S.C. § 9603(a), of these releases at or shortly after the time of the releases.

121.    The Defendants each failed to "immediately notify" the National Response Center as soon as they had knowledge of these releases, as required by Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

122.    Each time the Defendants failed to immediately notify the National Response Center of these releases at the Toledo Refinery, they violated Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

123.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

124.    As provided in CERCLA Section 109(c), 42 U.S.C. § 9609(c), the violations set forth above subject the Defendants to civil penalties.  *See also* 40 C.F.R. § 19.4.

## SEVENTH CLAIM FOR RELIEF

### Failure to Immediately Notify the Local Emergency Planning Committee and State Emergency Response Committee

#### (*Violations of EPCRA Section 304*)

125.    Paragraphs 1-26, 57-69, 73-75, and 83-85 are re-alleged and incorporated herein by reference.

126.    On the following dates, the following releases of hazardous or extremely hazardous substances occurred from the Toledo Refinery :

    a.   March 15, 2010, 700 lbs of $SO_2$;

    b.   September 23, 2010, 18 lbs of benzene;

    c.    October 6, 2010, 200 lbs of $H_2S$ and 3,100 lbs of $SO_2$;

    d.   December 13, 2010, 774 lbs of $SO_2$;

    e.    June 3, 2011, 1,094 lbs of $SO_2$;

    f.    July 9, 2011, 316 lbs of $H_2S$;

    g.    February 14, 2012, 896 lbs of $SO_2$; and

    h.    March 24, 2012, 10,226 lbs of sulfuric acid.

127.    Each of these releases is a "release" as that term is defined under Section 329(8) of EPCRA, 42 U.S.C. § 11049(8).

128.    Each of these releases equaled or exceeded the "reportable quantity," within the meaning of Section 304 of EPCRA, 42 U.S.C. § 11004, and 40 C.F.R. Part 355, Appendix A, for the respective hazardous or extremely hazardous substances.

129.    Subject to a reasonable opportunity for investigation and discovery, Lucas County, Ohio was "likely to be affected" by these releases, within the meaning of Section 304 of EPCRA, 42 U.S.C. § 11004.

130.    After these releases from the Toledo Refinery, the Defendants each failed to provide immediate notice of each release to the SERC for Ohio and community emergency coordinator for the LEPC for Lucas County, Ohio, and failed to immediately notify local emergency response personnel by calling the 911 emergency phone number.

131.    The Defendants violated Section 304(b) of EPCRA, 42 U.S.C. § 11004(b), when they failed to immediately notify the SERC and LEPC of each release.

132.    Unless restrained by an order of the Court, the violations alleged in this Claim for Relief will continue.

133.    As provided in EPCRA Section 325(b)(3), 42 U.S.C. § 11045(b)(3), the violations set forth above subject the Defendants to civil penalties. *See also* 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, the United States and Ohio respectfully request that this Court:

A.      Enter judgment in favor of the Plaintiffs and against the Defendants, BP Products and BP-Husky;

B.      Order the Defendants to take all actions necessary to operate the Toledo Refinery in compliance with the requirements of the Clean Air Act, EPCRA, and CERCLA that this Complaint alleges the Defendants violated, including the applicable requirements of the Ohio SIP;

C.      Permanently enjoin the Defendants from operating the Toledo Refinery except in accordance with the Clean Air Act, EPCRA, and CERCLA and applicable regulatory requirements, including the Ohio SIP;

D.      Order the Defendants to take other appropriate actions to remedy, mitigate, and offset the harm caused by their alleged violations of the Clean Air Act, EPCRA, and CERCLA by, among other things, requiring the Defendants to address or offset their unlawful emissions;

E.      Assess a civil penalty against each Defendant for each day of each of their respective violations of the Clean Air Act, CERCLA, and EPCRA, as enumerated in this Complaint;

F.      Assess a civil penalty against each Defendant for their respective violations of the Ohio SIP, and thus, violations of Ohio Rev. Code § 3704.05, in an amount not to exceed $25,000 for each day of each violation under Ohio Rev. Code § 3704.06;

G.      Award the Plaintiffs their costs of this action; and

H.      Award the Plaintiffs any other relief the Court deems just and proper.

Respectfully submitted,

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division


STEVEN D. SHERMER
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1134
(202) 616-6584 (Fax)
Steven.Shermer@usdoj.gov
JUSTIN E. HERDMAN
United States Attorney


JODY L. KING
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, Ohio  43604
(419) 259-6376
(419) 259-6360 (Fax)
Jody.king@usdoj.gov


Attorneys for the United States

OF COUNSEL:

WILLIAM WAGNER
MARY McAULIFFE
Associate Regional Counsels
United States Environmental Protection Agency
Region 5
Chicago, Illinois  60604

DAVE YOST
OHIO ATTORNEY GENERAL


*Wednesday M. Szollosi*

WEDNESDAY M. SZOLLOSI (0075655)
Assistant Attorney General
Environmental Enforcement Section
Toledo Regional Office
One Government Center, Suite 1340
Toledo, OH 43604
Telephone: (419) 245-2550
Facsimile: (877) 626-9316
wednesday.szollosi@ohioattorneygeneral.gov

Attorney for the State of Ohio

JS 44 (Rev. 06/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America and the State of Ohio

**DEFENDANTS**
BP Products North America Inc. and BP-Husky Refining LLC

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cook County, Illinois
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven Shermer, Senior Attorney, U.S. Dept. of Justice, ENRD/EES, 7611 Ben Franklin Station, Washington, DC 20044-7611, 202-514-1134

Attorneys *(If Known)*
Justin Savage, Sidley Austin, 202-736-8853
Michael Snyder, Shumaker, 614-628-4469

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C §§ 7413(b), § 9609(c), and 11045(b).
Brief description of cause:
Action seeking injunctive relief and civil penalties for Clean Air Act and other violations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED OR REFILED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
01/29/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**

Civil Categories: (Please check <u>one category only</u>).

1. ☑ General Civil
2. ☐ Administrative Review/Social Security
3. ☐ Habeas Corpus Death Penalty

\*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER: _____

**II.** <u>**RELATED OR REFILED CASES**</u>. See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled. Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action: ☐ is **RELATED** to another **PENDING** civil case ☐ is a **REFILED** case ☐ was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.** In accordance with Local Civil Rule **3.8**, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein. Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER. UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1) <u>**Resident defendant**</u>. If the defendant resides in a county within this district, please set forth the name of such county

**COUNTY:** Lucas County

Corporation **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

(2) <u>**Non-Resident defendant**</u>. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.

**COUNTY:**

(3) <u>**Other Cases**</u>. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.

**COUNTY:**

**IV.** The Counties in the Northern District of Ohio are divided into divisions as shown below. After the county is determined in Section III, please check the appropriate division.

<u>**EASTERN DIVISION**</u>

☐ **AKRON** (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
☐ **CLEVELAND** (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
☐ **YOUNGSTOWN** (Counties: Columbiana, Mahoning and Trumbull)

<u>**WESTERN DIVISION**</u>

☑ **TOLEDO** (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)